FILED IN CLERK'S OFFICE
U S.D.C. Atlanta

MAY 1 2 2004

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGE HERRMANN, *et al.*, On Behalf of Themselves and All Others Similarly Situated, ) ) ) | |
| Plaintiffs, ) | CIVIL ACTION |
| v. ) | FILE NO. 1:04-CV-0365-JEC |
| GUTTERGUARD, INC., DIXIE HOMECRAFTERS, INC. and All Affiliated Companies, ) ) ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND PLAINTIFFS' REQUEST FOR AN EMERGENCY HEARING SO THAT DEFENDANTS' MOTION CAN BE RESOLVED AS EXPEDITIOUSLY AS POSSIBLE**

**I.   Introduction**

Defendants' motion could not be more strategic—filed and served on Defendants' deadline for responding to Plaintiffs' initial written discovery (Plaintiffs' discovery was served by hand-delivery on April 7), and accompanied by (1) a motion by Defendants to stay all discovery, and (2) Defendants' responses and objections to Plaintiffs' written discovery, wherein Defendants refused to provide **any** documents or information in response to Plaintiffs' 38 requests for production

65

and 10 interrogatories primarily until after the Court rules on Defendants' Motion to Disqualify and accompanying motion to stay all discovery.[1]

Plaintiffs had no idea, when they referred Defendants to <u>McDermitt v. Cracker Barrel</u> during the February 27 attorneys' conference herein as controlling authority for applying LR 23.1 to a collective wage and hour complaint, that Defendants would ignore Judge Murphy's cited Order in <u>McDermitt</u> and focus instead upon defendant Cracker Barrel's motion to disqualify plaintiff McDermitt's counsel.   While Cracker Barrel's motion to disqualify was denied, it delayed progress in <u>McDermitt</u> for more than 3 months.

Defendants in the instant case have apparently realized that every month that passes with Plaintiffs "caught" in the Local "Catch 23"—prohibited by LR 23.1 from initiating communications to notify prospective plaintiffs with overtime claims similar to Plaintiffs of the pendency of this action until this Court either (a) conducts the hearing required under LR 23.1 and requested by Plaintiffs two months ago and/or (b) grants Plaintiffs' motion for conditional certification and permission to so notify prospective plaintiffs—more than $250,000 in overtime compensation and liquidated damages due to said prospective plaintiffs for overtime hours worked for

---

[1]<u>See</u> Defendants' responses to Plaintiffs' requests for production 1-7, 9, 12-18, 20-27 and 34-37, attached hereto as "Attachments A and B," Defendants' responses to Plaintiffs' Interrogatories 1, 4, 7, and 8 to Defendant GutterGuard, attached hereto as "Attachment C," and Defendants' responses to Plaintiffs' Interrogatory 1 to Defendant Dixie HomeCrafters, Inc., attached hereto as "Attachment D."

Defendants is permanently converted to an asset of Defendants. Thus, even if Defendants' motion to disqualify has absolutely no merit, should not have been filed and should be summarily denied, filing it benefits Defendants greatly financially if the motion delays **at all** the progress of this case and this Court's consideration of Plaintiffs' pending requests for a LR 23.1 hearing and conditional certification. Moreover, what better time to file such a strategic and potentially financially beneficial motion than when Defendants are on the brink of otherwise having to respond to Plaintiffs' first round of written discovery and provide Plaintiffs with documents and information which will support not only the individual claims of the named Plaintiffs but Plaintiffs' motion for conditional certification as well?

Plaintiffs also provided Defendants during the February 27 attorneys' conference with an invoice which Plaintiffs obtained from the public record of DeKalb County State Court of a fees suit filed after Plaintiffs' lead counsel left his former firm, Fisher & Phillips LLP, by that firm against Defendant Dixie HomeCrafters. This invoice shows that Fisher & Phillips LLP provided a "wage and hour review" to Defendants less than a year before the commencement of the 3-year statute of limitation applicable to Plaintiffs' overtime compensation claims if they are proved to be "willful." If this invoice is the motivating factor behind Defendants' instant motion to disqualify and Defendants aren't just quibbling over

the difference between the invoice's use of the term "review" and Plaintiffs' use of appropriate synonyms such as "brief" and "explain" (see Defendants' Memorandum, p. 15), one would have expected Defendants to have filed their motion to disqualify shortly after they received the invoice almost 2½ months ago. Moreover, if this invoice is the motivating factor behind Defendants' motion, the groundlessness of Defendants' motion becomes immediately apparent, inasmuch as the ethical restrictions of Disciplinary Rules 1.9 and 1.10 expressly exclude information which Rule 1.6 permitted to be disclosed.  Why should Kaspers and his firm be at a strategic disadvantage vis-à-vis every other attorney and law firm in this State regarding the use of publicly available, non-confidential information which Kaspers' accompanying Affidavit shows Kaspers and his firm obtained as members of the public?

The patently strategic nature of Defendants' instant motion is further demonstrated by the absence of any factual evidence to support it.  It is undisputed that n either Plaintiffs' lead counsel, his 3 associates, n or Plaintiffs' law firm has **ever** provided legal representation to **any** Defendant.  All of the cases cited in Defendants' motion involving lawyers or partners of lawyers who formerly represented a client whose interests in a substantially related matter are materially

adverse to those of the client now sought to be represented by the lawyer, are thus readily distinguishable from and inapplicable to the instant case.

Nor have Defendants recognized (or acknowledged) that, with both the substantial increase in the movement of lawyers from one firm to another and the growth of the size of law firms during the past several decades, the law regarding imputed knowledge necessary to disqualify a lawyer who never actually represented a client when s/he was with her/his former firm has changed substantially over the past two decades.  Today, evidence is required to establish that the challenged lawyer did indeed acquire confidential and protected information during her/his prior law firm association which s/he is now attempting to use to the current client's advantage and the former client's disadvantage.

No such evidence has been presented by Defendants in support of their instant motion.  While Defendants repeatedly allege that Kaspers acquired confidential and protected information regarding Defendants that is material to the current action while he was with Fisher & Phillips (see Defendants' Motion, pp. 2-3 and Memorandum, pp. 2, 6, 9, and 10), the affidavit testimony presented by Defendants does not support Defendants' allegations.  One of Kaspers' former partners at Fisher & Phillips LLP describes the way that a team of 15-20 lawyers that he and Kaspers were on periodically met.  However, there is no contention that Defendants, their

former legal representation by Fisher & Phillips LLP, or the advice they received regarding wage and hour law were ever the subject of any meeting that Kaspers attended.  Moreover, the wage and hour advice which Defendants appear, from the public invoice, to have received from Fisher & Phillips LLP appears from the same public records to be incidental and unrelated to the principal matter that Fisher & Phillips LLP was handling for Dixie HomeCrafters, Inc.--the defense of a sex harassment case then pending before this Court.   The affidavit submitted by Defendants from Kaspers' former partner Bert Brannen is silent on all three points. The affidavit submitted by Defendants from Kaspers' former associate Sandberg also does not affirmatively state that any confidential and material information was acquired; it simply says it "could have" been.  <u>See</u> Sandberg Affidavit, p. 3, ¶ 8. Contrary to the case law decided several decades ago cited by Defendants, "could have been" is insufficient as a matter of law to support disqualification in a case alleging imputed knowledge as the basis for the requested disqualification. Moreover, Kaspers' accompanying Affidavit expressly addresses and definitively denies that he acquired any such information during his association with Fisher & Phillips, and further indicates that he so informed Defendants prior to the filing of their instant motion.  Kaspers' Affidavit further explains when and how he acquired information regarding Fisher & Phillips' prior legal representation of Dixie

HomeCrafters, Inc.—long after Kaspers ended his association with Fisher & Phillips LLP. Kaspers' Affidavit thus expressly rebuts Defendants' allegations of formerly acquired confidential and material information.

The other affidavits submitted by Defendants are even weaker than Brannen's and Sandberg's. All Kaspers' former partner Huettner states is that he did not know, when he had lunch with Kaspers (on January 26) and communicated with Kaspers the following day (on January 27) that Kaspers was talking about bringing suit against a former client of Fisher & Phillips LLP. Kaspers' Affidavit proves that Kaspers didn't know that any Defendant was a former client of Fisher & Phillips when he communicated with Huettner on January 26 and 27. The first time Kaspers got any reason to suspect that Fisher & Phillips may have formerly represented Dixie HomeCrafters, Inc. was on February 10, when Kaspers discovered the lawsuit by Fisher & Phillips against Dixie HomeCrafters, Inc. in the Dunn & Bradstreet "Express Report." It was not until Kaspers reviewed the public file on that lawsuit 8 days later that he knew, for the first time, that Fisher & Phillips had, in fact, provided legal representation to Dixie HomeCrafters, Inc.

Moreover, Kaspers communications with Huettner occurred after Huettner resigned from Fisher & Phillips (on January 16, 2004). No evidence has been submitted that Huettner acquired confidential or protected information regarding

Fisher & Phillips' former representation of Dixie HomeCrafters during Huettner's association with Fisher & Phillips. Accordingly, there was nothing wrong with Huettner's providing legal advice to Kaspers. Indeed, if Huettner had decided to begin a third legal career and join Kaspers' firm, there would be nothing to have prevented him from doing so based on the evidence presented to this Court.

The affidavit from Kaspers' former partner John Thompson submitted by Defendants is bizarre. Thompson states that Kaspers said nothing improper to him and he said nothing improper to Kaspers, however, what Thompson believes Kaspers was thinking but never articulated is tainted. Thompson has provided no credentials as a psychic or clairvoyant. While Thompson's testimony may have been enough to get a reputed witch burned at a stake in Salem, Thompson's affidavit adds nothing of value to this Court's determination of Defendants' motion, however.

Ironically, the only evidence of potentially unethical conduct in Defendants' motion is the relief Defendants request from this Court. Disciplinary Rule 1.16(b) requires that, upon the termination of any legal representation, the lawyer "take steps to the extent reasonably practicable to protect a client's interests, such as...surrendering paper and property to which the client is entitled." The extraordinary relief requested by Defendants—that Kaspers and his firm be barred from any communication whatsoever with replacement counsel and not turn over

**any** of the files and documents that they have assembled or prepared in representing Plaintiffs—is compelling evidence that Defendants' motion is not about the rules of ethical conduct or any alleged violation of those rules by Kaspers or his firm. Defendants know that Kaspers is a strong advocate for the interests of his clients, and thus a formidable adversary. Defendants apparently do not like what Kaspers has already done for the Plaintiffs in this case. That is not a good reason to disqualify Kaspers or his firm. However, it may be a good reason for sanctioning Defendants for wasting Plaintiffs' and the Court's time with such a patently groundless and strategic motion. For the reasons set forth, Defendants' motion should be denied.

## II.    The Facts

A.    Neither Kaspers, his associates nor his firm has ever represented any of the Defendants (Kaspers' Affidavit, ¶ 2).

B.    Kaspers never acquired information regarding Fisher & Phillips' former legal representation of any Defendant, or any confidential information regarding that representation, during or from his prior association with Fisher & Phillips or from his former partners Henry Huettner and John Thompson, and Kaspers so informed Defendants prior to Defendants' filing of their instant motion (Kaspers' Affidavit, ¶¶ 3 and 24-35). Kaspers' lack of knowledge is consistent with the fact that Fisher

9

& Phillips had over 7,000 present or former clients and over 150 attorneys during Kaspers' association with that firm (Id. ¶13).

C.    The only information regarding Fisher & Phillips LLP's prior legal representation of any Defendant which Kaspers acquired came from the public records of DeKalb County State Court and was obtained by Kaspers after the instant lawsuit was filed, or from Defendants' current counsel. (Id.)

D.    The public records obtained by Plaintiffs indicate that Defendant Dixie HomeCrafters, Inc. most recently received legal advice from Fisher & Phillips on April 11, 2000—ten (10) months prior to the actionable period in the present case (see "Attachment D" to Kaspers' Affidavit).

E.    The public records obtained by Plaintiffs indicate that the vast majority (over 95%) of the legal representation provided by Fisher & Phillips LLP to Dixie HomeCrafters related to a sex harassment matter which resulted in a lawsuit filed with this Court styled Linda M. Bethel v. Dixie HomeCrafters, Inc., Glenn Odum, and John Judon, N.D. Ga., Civil Action No. 1:99-CV-0583. The Bethel case is totally unrelated and dissimilar to instant collective overtime compensation action. Moreover, the public records of the DeKalb County State Court indicate that the legal representation provided by Fisher & Phillips relating to the Bethel case came primarily from two attorneys, Christine Howard and Jennifer Sandberg, and two

paralegals; the only other Fisher & Phillips attorney to provide legal representation to Dixie HomeCrafters, Inc. was Bert Brannen, who provided less than 2 hours of billable advice, in the aggregate, to Dixie HomeCrafters, Inc.

F.     There is no evidence that Jennifer Sandberg notified, advised or discussed with Plaintiffs' lead counsel the Employment Law Review which attorney Sandberg provided to Defendant Dixie HomeCrafters, Inc. on February 28, 2000, or any confidential information obtained from the client or provided by attorney Sandberg to Dixie HomeCrafters, Inc. on that date.  Plaintiffs' lead counsel expressly and adamantly denies that any such notice, advice or discussion ever occurred or that he acquired any such information from anyone at Fisher & Phillips during his association with that firm or since.

G.     The only information regarding the prior legal representation of any Defendant which Plaintiffs have obtained other than from the public records of DeKalb County State Court have come from Defendants' current counsel (see, e.g., Defendants' counsel's April 21 letter to Plaintiffs' counsel and Kaspers' Affidavit, ¶¶ 34-36).

H.     Throughout the instant litigation, Defendants have maintained that Dixie HomeCrafters, Inc. was improperly joined as a party-defendant and should be dismissed (see the parties' March 12 Joint Preliminary Planning Report,

¶ 5(b)("Defendants contend Dixie HomeCrafters, Inc. and other affiliated companies, besides GutterGuard, Inc., are improperly joined as parties."), the parties' March 12 Certificate of Interested Persons, ¶ 1 ("Defendants deny Dixie HomeCrafters Inc and affiliated companies, other than GutterGuard, Inc., are proper parties to this lawsuit"), and Defendants' April 21 Initial Disclosure No. 2 ("Dixie HomeCrafters should be dismissed").

I.     In addition, on page 24 of their April 5 Response to Plaintiffs' Motion for Conditional Certification, Defendants have informed this Court that the Fisher & Phillips invoice reflecting the 2/28/00 Employment Law Review provided by attorney Sandberg to Dixie HomeCrafters, Inc. ("Attachment D" to Fisher & Phillips' fees complaint against Dixie HomeCrafters, Inc.) has no "connection to any of the facts in this case."  And in their more recent responses to Plaintiffs' written discovery, Defendants contend that the information on this invoice "is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence" (see "Attachments A and B" hereto, ¶¶ 9-11).  While Plaintiffs dispute Defendants' contention and believe that a "wage and hour review of job titles and job duties of the 200 employees at all business, deductions from paychecks, time-keeping, lunch and break times, etc." is relevant to this Court's determination as to whether Defendants' overtime compensation violations were "willful" and thus

subject to a 3-year statute of limitation, Defendants' repeatedly articulated position

that this information is irrelevant and inadmissible raises a serious question

regarding the bona fides of Defendants' representations to this Court and/or motive

behind the instant motion.

**III.    Argument and Citation of Authorities**

**A.    Because disqualification is such a drastic sanction and thus such a potent weapon capable of being misused for strategic purposes, litigants who move for disqualification of opposing counsel necessarily have a heavy burden of proof.**

As Judge Murphy noted on pages 88-90 of his August 24, 1999 Order in

McDermitt v. Cracker Barrel, N.D. Ga. (Rome Div.), Civil Action No. 4:99-CV-

0001-HLM,

> "An order for disqualification is 'a drastic means which courts should hesitate to impose except when absolutely necessary.'" (quoting Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd., 961 F. Supp. 1580, 1582 (M.D.Fla. 1997)(quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721-22 (7th Cir. 1982))....
>
> ...
> "Because of the impact a motion to disqualify has on the party losing her counsel, the moving party is held to a high standard of establishing the basis for the motion, and the need for disqualification." Id.; see also Metrahealth, 961 F. Supp. at 1582 ("The burden of proof to establish grounds for disqualification is on the party moving for disqualification.)
>
> ...
> If reasonable minds could differ as to the propriety of counsel's conduct, the court should deny the motion to disqualify. In re Finkelstein, 901 F.2d 1560, 1565 (11th Cir. 1990)("This Court will 'not deprive an attorney of the opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in

appraising the propriety of that conduct.'")(quoting <u>In re Ruffalo</u>, 390 U.S. 544, 556 (1968).)

Finally, because parties may use motions to disqualify as tactical weapons, the Court should exercise extreme caution when considering such motions. <u>Nuri</u>, 5 F. Supp.2d 1299, 1304 (M.D.Ala. 1998). The Court must ensure that the party who filed the motion to disqualify is not using the motion to harass opposing counsel or the opposing party. <u>Id.</u> ("[B]ecause a motion for disqualification is such a 'potent weapon' and 'can be misused as a technique of harassment,' the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents.")

As similarly noted in Comment 15 to Rule 1.7 of the Georgia Rules of Professional Conduct, any motion for disqualification based upon alleged ethical conflicts should preliminarily "be viewed with caution" because of its potential to "be misused as a technique of harassment," and such a motion must "**clearly**...call into question the fair or efficient administration of justice" [emphasis added] before it is seriously considered by any Court.

As Judge Murphy additionally noted on pages 103-104 of his same August 24, 1999 Order in <u>McDermitt</u>, because "[d]isqualification is a harsh sanction, often working substantial hardship on the client" (quoting <u>Norton v. Tallahassee Mem'l Hosp.</u>, 689 F.2d 938, 941 n.4 (11th Cir. 1982), factors which must be considered when deciding whether to disqualify an attorney based on the alleged appearance of impropriety include the relationship the attorney developed with the clients and the energy expended by the attorney in pursuing the case.

The contemporaneously filed petition filed by the named Plaintiffs in support of maintaining their relationship with their existing counsel shows that a good working relationship has already developed between the Plaintiffs and their counsel. Moreover, while this case has been pending before this Court for only 3 months, there has already been substantial litigation activity, resulting in more than 50 docket entries, a case file which is already voluminous, and the expenditure by Plaintiffs' counsel of more than $250,000 on behalf of their clients (Kaspers' Affidavit, ¶ 37).

When Judge Murphy entered his August 24, 1999 Order in McDermitt, he also noted:

> Very few attorneys practice in the area of plaintiffs' class action employment discrimination lawsuits. Even fewer attorneys are willing to take a case such as this one on a contingent fee basis. If the Court disqualified [name of attorney deleted] as Plaintiffs' counsel in this case, Plaintiffs would face the difficult task of locating counsel to accept the responsibility of litigating this case as a collective action. If Plaintiffs could not find counsel willing to accept this putative collective action, each individual Plaintiff would have to persuade an attorney to accept his or her case. The end result would be the abandonment of most of the individual claims.

This Court can take judicial notice that the paucity of Plaintiffs' counsel in Metropolitan Atlanta who are qualified and willing to take a case such as the one at bar on a contingent fee basis has not changed substantially since Judge Murphy made his above-quoted observation in McDermitt. All of the above indicates that

the Court should approach Defendants' motion with a presumption against disqualification, which should only be considered if there is compelling evidence to support such a drastic sanction.

**B.    Because there is no dispute that Kaspers, his associates and his firm have never represented any Defendant, Rule 1.9(a), which begins "A lawyer who has formerly represented a client in a matter" has no applicability to Kaspers, his associates or firm or this case.[2]**

Many jurisdictions now limit automatic disqualification to cases where the attorney whose disqualification is sought was personally involved in the representation of the former client.  See, e.g., <u>Dieter v. Regents of the Univ. of California</u>, 963 F. Supp. 908, 910( E.D.Cal 1997).  Since Defendants do not allege that Kaspers was ever personally involved in the former representation of Dixie HomeCrafters, I nc. b y F isher & P hillips, automatic disqualification w ould not b e appropriate here.

**C.    The law regarding disqualification based upon imputed knowledge of a former representation has changed over the past two decades to require specific evidence that the knowledge imputed was, in fact, acquired.**

The law of disqualification of counsel based upon imputed knowledge has changed substantially over the past several decades due to the increasing mobility of

---

[2]Similarly, because Rule 1.10(a) begins, "While lawyers are associated in a firm…," and because Defendants have presented no evidence to show that Henry Huettner ever acquired information regarding Fisher & Phillips' former representation of Dixie HomeCrafters, Inc., Defendants' allegation, on page 3 of their motion, that Huettner "would be disqualified from representing Plaintiffs" after he retired is simply wrong.

lawyers and continued expansion of the size of law firms. "This allows attorneys on the periphery of issues to avoid being cast as having represented a client when, in fact, they merely belonged to the firm." Chrispens v. Coastal Ref. & Mktg., Inc., 257 Kan. 745, 897 P.2d 104, 115 (1995). A rebuttable presumption standard, rather than a p er s e a pproach t o d isqualification, h as e volved in c ases a lleging i mputed knowledge as the basis for disqualification in order to avoid an "overly harsh" rule that would unduly prejudice the efforts of clients to acquire proper representation. In re Del-Val Fin. Corp. Sec. Litig., 158 F.R.D. 270, 275 (S.D.N.Y. 1994). See, more generally, Kenneth L. Penegar, The Loss o f Innocence: A Brief History of Law Firm Disqualification in the Courts, 8 Geo. J. Legal Ethics 831 (1995) (surveying the shift in the case law from a strict disqualification approach to a more pragmatic analysis of confidence sharing). A rebuttable presumption approach is entirely consistent with the new "functional analysis" methodology proposed by the commentary accompanying the latest version of the American Bar Association's Model Rule 1.9. The rebuttable presumption approach is the one adopted by most federal courts. See, e.g., Cromley v. Board of Educ. Of Lockport Tp. High School Dist. 205, 17 F.3d 1059 (7th Cir. 1994)("the presumption that an attorney has knowledge of the confidences and secrets of his firm's clients is rebuttable....As a first step...we must determine whether the attorney...**was actually privy to** any

confidential information his prior law firm received from the party now seeking disqualification") [emphasis added]; <u>Exterior Systems, Inc. v. Noble Composites, Inc.</u>, 210 F. Supp.2d 1062, 1071 (N.D. Ind. 2002)("no violation of Rule 1.10(b) occurs unless the lawyer who switched firms **actually gained** confidential information from the former client while working for his former firm....Nothing in the record indicates that W assisted...with [the] representation.") [emphasis added]; <u>VECC, Inc. v. Bank of Nova Scotia</u>, 222 F. Supp.2d 717, 721-22 (D.Virgin Islands 2002)("if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict."). Defendants' contention on page 14 of their Memorandum that it does not matter whether Kaspers or his former associates now have any specific recollection of information that could have been disclosed is incorrect. Actual evidence regarding what, if anything, was disclosed is instead determinative.

D.    **Because the information upon which Defendants base their motion for disqualification is part of the public record and thus available to and obtainable by anyone in this State, and because the Affidavit of Plaintiffs' lead counsel establishes that Plaintiffs obtained such information from the public record and not during or from his prior association with Fisher & Phillips LLP, Defendants have failed to establish the necessary evidentiary predicate for raising a legitimate challenge to Plaintiffs' counsel's competency to continue to represent the interests of his clients.**

Defendants' contention that Plaintiffs' lead counsel has violated Rule 1.9(b) of the Georgia Rules presumes that Plaintiffs' lead counsel Kaspers acquired information during his association with Fisher & Phillips which is protected under Rule 1.6 of the Georgia Rules.   Defendants have no evidence to support their presumption.   Defendants have made repeated allegations but offer no evidence to show that Kaspers acquired any information regarding Dixie HomeCrafters, Inc. or Fisher & Phillips' former representation of Dixie HomeCrafters, Inc.   Moreover, Kaspers' Affidavit affirmatively states that he acquired no confidential and protected information regarding any Defendant either during his association with Fisher & Phillips or since.

The information regarding the Employment Law Review which attorney Sandberg of Fisher & Phillips conducted for Defendant Dixie HomeCrafters, Inc. is not subject to the protection of Rules 1.9 or 1.10 of the Disciplinary Rules because this information is part of the public record of the DeKalb County State Court regarding the fees suit by Fisher & Phillips against Dixie HomeCrafters, Inc.   Rule 1.6(b)(1) expressly provides that "[a] lawyer may reveal information covered by paragraph [1.6](a) which the lawyer reasonably believes necessary to:   …(iii) establish a claim…on behalf of a lawyer in a controversy between the lawyer and the client."   Georgia Bar Advisory Opinion 41 (dated 9/24/84 and amended

11/15/85) confirms that such a controversy between a lawyer and client in which "a lawyer may reveal confidences and secrets of a client" under Rule 1.6(b)(1) includes controversies requiring "the lawyer to establish and collect his fee" such as the fees dispute reflected in the public litigation in DeKalb County State Court between Fisher & Phillips and Dixie HomeCrafters, Inc.

At the point that Fisher & Phillips' invoice for attorney Sandberg's 2/28/00 Employment Law Review became a matter of public record as "Attachment D" to Fisher & Phillips' fees complaint against Dixie HomeCrafters, the contents of that document lost any confidentiality and protection that they might have enjoyed under Rule 1.6 and, in turn, under Rules 1.9 and 1.10, since Rules 1.9(b) and 1.10(b) only protect "information protected by Rule 1.6: "Confidentiality" and Rule 1.9(c) excludes from its protection confidential information "except as Rule 1.6: Confidentiality of Information...would permit...or when the information has become generally known." Comment 11 to Rule 1.9 additionally confirms that Rule 1.9 does not "preclude the lawyer from using generally known information about that client when later representing another client."

Defendants are again attempting to turn the law on its head for their own strategic advantage. The Disciplinary Rules were designed to prevent a lawyer from obtaining confidential information from a client and then using that information

against that client to another (and adverse) client's advantage. Here, Defendants are suggesting that Plaintiffs' counsel should be at a competitive disadvantage vis-à-vis every other lawyer in the State, all of whom have access to the DeKalb County State Court's public record of the fees lawsuit by Fisher & Phillips against Dixie HomeCrafters, Inc., simply because Plaintiffs' lead counsel used to be associated with Fisher & Phillips but acquired no confidential information regarding Dixie HomeCrafters, Inc. either during his association with Fisher & Phillips or since. Defendants' position is grossly unfair both to Plaintiffs and to Plaintiffs' counsel. Defendants' position also lacks any support in the Disciplinary Rules and the case law.

There are also temporal, substantial similarity, material adversity and materiality requirements in Rules 1.9(b) and 1.10(b) which are not satisfied in this case. The use of the past tense in both 1.9(b)(2)("about whom the lawyer **had** acquired information") and 1.9(c)("shall not **thereafter** use or reveal information") indicates that the basic thrust of Rule 1.9's protection is: "don't take confidential information that you acquired while working at one firm and subsequently use it against the client from whom it was acquired and/or to whom it relates." As the 2nd Comment to Rule 1.9 states: "The underlying question is whether the lawyer was so

involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."

The prohibition in 1.9 has no application here, because Plaintiffs' lead counsel acquired no confidential information regarding Fisher & Phillips' legal representation of Dixie HomeCrafters, Inc. while he was associated with Fisher & Phillips (or since). As Comment 8 to Rule 1.9 states:

> Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6: Confidentiality and 1.9(b): Conflict of Interest: Former Client. Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict.

Hence inclusion of the term "knowingly" in Rule 1.9(b). As Comment 10 to Rule 1.9 additionally points out, abstention from adverse representation is required "by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification."

Regarding the "same or substantially related matter" requirement of 1.9(b), from the public records of the DeKalb County State Court, it would appear that the principal matter that Fisher & Phillips has handled for Dixie HomeCrafters, Inc. was the defense of a sexual harassment case totally unrelated to the instant proceeding. As to the legal advice provided by Fisher & Phillips to Dixie HomeCrafters, Inc.

22

unrelated to the sex harassment defense, Plaintiffs presume that there is some relationship between attorney Sandberg's 2/28/00 wage and hour review and Plaintiffs' claim that Defendants' overtime compensation violations were "willful" because the basic requirements of the wage and hour law have not changed since February 28, 2000. However, it is undisputed that the earliest potential actionable period in this case is February 9, 2001—almost a year after Sandberg's 2/28/00 wage and hour review. While Plaintiffs believe there is some relevancy of Sandberg's 2/28/00 wage and hour review to the commencement of Plaintiffs' claims eleven months later, evidence volunteered by Defendants in their April 21 letter and instant motion regarding Fisher & Phillips' wage and hour advice to GutterGuard in April and June, 2000 would appear to have even greater relevance.

Defendants' filings also raise a real question as to whether the interests at issue in the pending litigation are "materially adverse" to those involved in Fisher & Phillips' legal representation of Dixie HomeCrafters, Inc. which ended four years ago (on April 11, 2000). As already mentioned above, since the commencement of this litigation, and as recently as April 22, Defendants have maintained that Dixie HomeCrafters, Inc. was improperly joined, should not have been named as a party defendant, and should be dismissed. Defendants have additionally maintained that Fisher & Phillips' invoice for the 2/28/00 Employment Law Review has no

"connection to any of the facts in this case" and is thus completely irrelevant and undiscoverable.   While Plaintiffs dispute Defendants' contentions, Defendants' articulated positions regarding Dixie HomeCrafters, Inc.'s status as a defendant and the immateriality of the February, 2000 invoice from Fisher & Phillips hardly makes the instant matter one requiring disqualification of Plaintiffs' counsel under 1.9.  As Rule 1.9(c)(2) expressly states, the acquired information must be "material to the [pending] matter."

Finally, Kaspers' Affidavit definitely refutes Defendants' allegations of wrongdoing.

**E.      Defendants' Motion is Wrongly Intended to Distract the Court's Attention From the Deficiencies of Defendants' Counsel and, even more importantly, the Illegality of Defendants' No-Overtime Pay Practice.**

As Judge Murphy noted on pages 103-104 of his above-cited August 24, 1999 Order in McDermitt v. Cracker Barrel, among the factors which should be considered in deciding whether to disqualify an attorney based upon the alleged appearance of impropriety is "the conduct of the party moving for disqualification." (Quoting Cox v. American Cast iron Pipe Co., 847 F.2d 725, 731-32 (11th Cir. 1988).

In the instant case, Plaintiffs and their counsel have complied with all of the rules and procedures of this Court.   Ironically, Defendants and the attorneys

representing them have not. They have intentionally ignored the presumptive application of LR 23.1 to this case based upon Judge Murphy's application of LR 23.1 to § 216(b) collective actions in <u>McDermitt</u>. They also missed the deadline for filing their Initial Disclosures by 33 days.

Defendants' motion also distracts the Court's attention from the real issues in this case. The real question is whether Defendants knew on February 9, 1991, and continuing to the present, that their crew chiefs, installers and run-off crew members did not qualify for any exemption from the overtime compensation requirements of the FLSA and therefore should have been paid overtime. Defendants know the answer to this question. Their instant motion is nothing more than a strategic barrier designed to thwart the Court from obtaining the answer.

**F.     The relief requested by Defendants would violate Rule 1.16(d)**

For all of the foregoing reasons, Defendants' motion for disqualification should be denied. If the Court deems it necessary, a hearing on Defendants' motion should be scheduled as soon as possible so that this matter can be disposed of as expeditiously as possible and Defendants not be allowed to benefit financially from any hoped-for delay.

Respectfully submitted:

William F. Kaspers, Ga. Bar No. 408575
Sherri L. Kimmell, Ga. Bar No. 419135
Deborah V. Haughton, Ga. Bar No. 338038
KASPERS & ASSOCIATES LAW
  OFFICES LLC
75  14th Street, Suite 2130
Atlanta, GA  30309
(404) 888-3740 (phone)
(404) 888-3737 (fax)
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

------------------------------------------------------X

GEORGE HERRMANN, ET AL.,

        Plaintiffs,

        v.

GUTTERGUARD, INC.,
DIXIE HOMECRAFTERS, and All
      Affiliated Companies,

        Defendants.

Civ. No.: 1:04-CV-0365-JEC

------------------------------------------------------X

## GUTTERGUARD, INC.'S RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant GutterGuard, Inc. ("GutterGuard"), by its undersigned counsel, pursuant to Rule 34 of the Federal Rules of Civil Procedure, responds to Plaintiffs' First Request for Production of Documents.

### GENERAL OBJECTIONS

1.     GutterGuard objects generally to Plaintiffs' Request For Production of Documents on the grounds Plaintiffs request information which is not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.



ATTACHMENT__A____

2. GutterGuard objects generally to Plaintiffs' Request for Production to the extent Plaintiffs request information or documents which are subject to the attorney/client privilege, or which constitute trial preparation materials or attorney work product, or which are otherwise privileged or protected and not subject to discovery. The documents which fall within the scope of this objection include: (a) communications between outside counsel and GutterGuard employees, including but not limited to, in-house counsel, paralegals, and human resource personnel; (b) communications between GutterGuard in-house counsel and GutterGuard employees, including but not limited to, human resources personnel; and (c) communications, prepared at the direction of counsel, between GutterGuard human resources personnel and other GutterGuard employees.

3. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4. GutterGuard objects to Plaintiffs' Request For Production on the grounds Plaintiffs request information or documents which constitute or contain trade secrets or confidential corporate, financial, or commercial information. GutterGuard will produce such information or documents, if not

subject to any other objections, only pursuant to an appropriate Stipulation and Order of Confidentiality.

5.    GutterGuard objects generally to Plaintiffs' Request for Production on the grounds Plaintiffs request information or documents regarding current or former employees of GutterGuard, other than Plaintiffs, which is personal or confidential.    GutterGuard will produce such information or documents, if not subject to any other objections, only pursuant to an appropriate Stipulation and Order of Confidentiality.

6.    GutterGuard objects to each request (or part thereof) on the grounds Plaintiffs require GutterGuard to warrant the information or documents provided are exhaustive of each request.   GutterGuard will endeavor to provide information in good faith and consistent with its obligations under the Federal Rules of Civil Procedure and the local rules of the Northern District of Georgia.

7.    GutterGuard is continuing to investigate Plaintiffs' claims.   It reserves the right to supplement its responses to each and every request for production of documents (or part thereof).

## REQUESTS FOR PRODUCTION OF DOCUMENTS

<u>Request 1</u>:   The full names and last known addresses of all persons employed by any Defendant as a crew chief, installer and/or run-off crew member anytime during the period from February 9, 2001 to the present.

**Response:**   GutterGuard objects to Request No. 1 on the grounds it does not request a readily identifiable document.  GutterGuard also objects to Request No. 1 on the grounds it fails to describe the documents requested with reasonable particularity as required by Fed.R.Civ.P. 34(b).  GutterGuard further objects to Request No. 1 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification.  <u>See</u> <u>Crawford v. Dothan City Bd. of Edu.</u>, 214 F.R.D. 694 (M.D. Ala. 2003); <u>Spellman</u> <u>v. Visionquest Nat'l, Ltd.</u>, 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); <u>Brooks    v.    BellSouth</u> <u>Telecommunications, Inc.</u>, 164 F.R.D. 561, 571 (N.D. Ala. 1995); <u>see also</u> <u>Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989).  GutterGuard further objects to Request No. 1 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs.  GutterGuard further

4

objects to Request No. 1 on the grounds it seeks personal and confidential information regarding GutterGuard employees, other than Plaintiffs. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents, pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 2:    All documents reflecting the number of hours worked each workweek from February 9, 2001 to the present (excluding any workweek(s) in which no work was performed) by each person employed by any Defendant anytime during the period from February 9, 2001 to the present, including but not limited to each person employed as a crew chief, installer and/or run-off crew member by any Defendant anytime during the period from February 9, 2001 to the present.

**Response:**  GutterGuard objects to Request No. 2 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks

v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). GutterGuard further objects to Request No. 2 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard further objects to Request No. 2 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs. GutterGuard objects to Request No. 2 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 3:   All documents reflecting the compensation received each workweek from February 9, 2001 to the present (excluding any workweek(s) in which no work was performed and compensation received) by each person employed by any Defendant anytime during the period from February 9, 2001 to the present, including but not limited to all persons employed by any Defendant as a crew chief, installer and/or run-off crew member anytime during the period from February 9, 2001 to the present, and including but not limited to all hard and soft copies of Defendants' payroll records covering the period from February 9, 2001 to the present.

**Response:**   GutterGuard objects to Request No. 3 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). GutterGuard further objects to Request No. 3 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence

to the extent it seeks information regarding non-Plaintiffs. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard further objects to Request No. 3 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs.  GutterGuard objects to Request No. 3 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 4:   All weekly and year-to-day earnings statements issued by any Defendant from February 9, 2001 to the present, including but not limited all earning statements issued since February 9, 2001 to any person employed as a crew chief, installer or run-off crew member by any Defendant.

**Response:**   GutterGuard objects to Request No. 4 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  GutterGuard further objects to Request No. 4 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard further objects to Request No. 4 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs.  GutterGuard objects to Request No. 4 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and

9

unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 5:   All IRS W-2 statements covering any and all workweeks during the period from February 9, 2001 to the present issued by any Defendant to any person employed by any Defendant, including but not limited to any person employed by any Defendant as a crew chief, installer or run-off crew member anytime during said period.

**Response:**   GutterGuard objects to Request No. 5 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification.   See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see

10

also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  GutterGuard further objects to Request No. 5 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard further objects to Request No. 5 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs.  GutterGuard objects to Request No. 5 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 6:  All organization charts of any Defendant since Defendant GutterGuard, Inc. was incorporated on January 20, 2000.

**Response:**  GutterGuard objects to Request No. 6 on the grounds it seeks documents neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.  Any confidential document will only be produced pursuant to an appropriate stipulation and order of confidentiality.

Request 7:  All documents referencing the ownership, incorporation, dissolution or merger of the Defendants or any of their affiliated companies since January 1, 1991.

**Response:**  GutterGuard objects to Request No. 7 on the grounds it seeks documents neither relevant nor reasonably calculated to lead to the discovery of

admissible evidence. GutterGuard further objects to Request No. 7 to the extent it seeks documents produced prior to the incorporation of GutterGuard. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates. Any confidential document will only be produced pursuant to an appropriate stipulation and order of confidentiality.

Request 8: All documents referencing, relating, concerning or pertaining to any audit of Defendants' employment practices and/or policies conducted since January 20, 2000.

**Response:** GutterGuard objects to Request No. 8 on the grounds it seeks information protected by the attorney-client privilege, the attorney work product doctrine and any applicable accountant-client privileges. GutterGuard further objects to Request No. 8 on the grounds it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

13

documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews.    GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Request 9: The March 17, 2000 invoice no. 10738-209018 from Fisher & Phillips LLP to any Defendant covering Phases One and Two of an Employment Law Review conducted on February 7 and 28, 2000, by Jennifer Sandberg.

**Response:** GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general objections GutterGuard will produce relevant, responsive, not-privileged documents after the Court rules on its Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 10:   All documents prepared, distributed and/or referred to prior to, during, following or otherwise in connection with the "Phase 2 of Employment Law Review" conducted and/or presented to any of Defendants' owners, managers

and/or employees by attorney Jennifer Sandberg and/or the law firm of Fisher & Phillips on February 28, 2000.

**Response:**  GutterGuard objects to Request No. 10 on the grounds it seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine.  GutterGuard further objects to Request No. 10 on the grounds it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews.  GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Request 11:  All notes and records of all individuals who attended all or any portion of the "Phase 2 of Employment Law Review" conducted and/or presented by attorney Jennifer Sandberg and/or the law firm of Fisher & Phillips on February 28, 2000.

**Response:**  GutterGuard objects to Request No. 11 on the grounds it seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine.  GutterGuard further objects to Request No. 11 on the grounds it is neither relevant nor reasonably calculated to lead to the discovery of admissible

evidence to the extent it seeks documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews. GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Request 12: All Employee Handbooks, Employee Manuals, Manager and/or Supervisor Policies and Procedures Manuals, Guidelines and/or Memoranda, and any and all revisions to same issued, published and/or used by any Defendant anytime during the period from January 20, 2000 to the present.

**Response:** GutterGuard objects to Request No. 12 on the grounds it is overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents that do not pertain or apply to the Plaintiffs. GutterGuard further objects to this request because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that

16

presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). GutterGuard further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, GutterGuard will produce responsive, not-privileged documents applicable to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 13: All correspondence, memoranda, email communications and other documents dated anytime during the period from January 20, 2000 to the present which refer or in any way relate in general to the manner in which crew chiefs, installers and/or run-off crew members employed by any of Defendants at any time during the period from January 20, 2000 to the present have been or are to be paid, and/or in particular to the payment or non-payment of overtime compensation to any crew chief, installer or run off crew member employed by any Defendant at any time during the period from January 20, 2000 to the present.

**Response:** GutterGuard objects to Request No. 13 to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine. GutterGuard objects to Request No. 13 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). GutterGuard further objects to Request No. 13 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard further objects to Request No. 13 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs. GutterGuard

18

objects to Request No. 13 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 14:   All correspondence, memoranda, email communications, reports, records of telephone or other conferences, and all other documents relating to the "due diligence" investigation conducted by any prospective lender(s) relating to Defendants' application for a loan to finance the purchase of the metal manufacturer who provides the metal which Defendants use to fabricate gutter guards, including but not limited to any and all references during said "due diligence" to the payment or non-payment by Defendants of overtime compensation to any crew chiefs, installers and/or run-off crew members.

**Response:**  GutterGuard objects to request No. 14 on the grounds it requests confidential corporate, financial, or commercial information regarding privately-held entities. GutterGuard further objects to Request No. 14 to the extent it seeks

19

information protected by the attorney-client privilege and/or the attorney work product doctrine. GutterGuard further objects to Request No. 14 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). GutterGuard further objects to Request No. 14 as overbroad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs and to the extent it seeks documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist,

GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 15:  Any and all advice, opinion letters and/or memoranda obtained by any Defendant relating to the payment or non-payment of overtime compensation to crew chiefs, installers and/or run-of crew members.

**Response:**  GutterGuard objects to Request No. 15 to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.   GutterGuard further objects to Request No. 15 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  GutterGuard further objects to Request No. 15 as overbroad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery

of admissible evidence to the extent it seeks information regarding non-Plaintiffs. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 16:  All documents published and/or in effect at any time since January 20, 2000 referencing, relating, concerning or pertaining to any change or contemplated change in the policy and/or practice of Defendants regarding the payment or non-payment of overtime compensation to crew chiefs, installers and/or run-off crew members employed by any Defendant, including but not limited to all documents relating to the decision(s): (a) to pay overtime compensation to crew chiefs, installers and run-off crew members from September 29 to November 17, 2000, (b) to discontinue the payment of overtime compensation to such employees after November 17, 2000, (c) to not pay overtime compensation to said employees from November 18, 2000, to January, 2004, (d) to

22

pay overtime compensation to said employees during several workweeks in January, 2004, and/or (e) to discontinue and not pay overtime compensation to said employees thereafter.

**Response:**   GutterGuard objects to Request No. 16 to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine.   GutterGuard further objects to Request No. 16 on the grounds it is not relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews.   GutterGuard further objects to the extent Plaintiffs seek information regarding non-Plaintiffs. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

<u>Request 17</u>:  All email correspondence between any of Defendants' owners and/or manages relating to any of the changes referenced in the immediately preceding request no. 16.

**Response:**  GutterGuard objects to Request No. 17 to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work product doctrine.  GutterGuard further objects to Request No. 17 on the grounds it is not relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews.  GutterGuard further objects to the extent Plaintiffs seek information regarding non-Plaintiffs. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 18:  All documents published and/or in effect at any time since January 20, 2000 referencing, relating, concerning or pertaining to each and every work-related trip or assignment in which any current or former crew chief, installer and/or run-off crew member employed by any Defendant crossed state lines during the performance of work for which they were compensated by Defendants.

**Response:**   GutterGuard objects to Request No. 18 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification.  See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  GutterGuard further objects to Request No. 18 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs.  GutterGuard further objects to Request No. 18 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs.  GutterGuard objects to Request No. 18 insofar as it seeks information or

documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 19:  All documents which were gathered and/or reviewed by Defendants' Vice President of Production Jeffrey Howe, any of his subordinates and/or any of Defendants' agents or attorneys following Defendants' receipt of the Plaintiffs' initial Collective Action Complaint herein on February 10, 2004.

**Response:**  GutterGuard objects to request No. 19 on the grounds it seeks information and documents protected by the attorney-client privilege and/or the attorney work product doctrine.  GutterGuard further objects to Request No. 19 to the extent it seeks information regarding non-Plaintiffs.

<u>Request 20</u>:   All documents which Defendants' Vice President of Production Jeffrey Howe reviewed and/or upon which he relied as the basis for any of the statements contained in paragraph 23 on pages 11 and 12 of Howe's March 8, 2004 Declaration.

**Response**: GutterGuard objects to Request No. 20 to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

<u>Request 21</u>:  All documents which were reviewed and/or relied upon as the basis for any of the statements contained in the Declarations which were signed, served and filed in this case on April 5, 2004.

**Response**:  GutterGuard objects to Request No. 21 to the extent it seeks documents or information protected by the attorney-client privilege and/or the attorney work product doctrine.  GutterGuard further objects to Request No. 21 on the grounds it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification.  <u>See Crawford</u>

v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). GutterGuard further objects to Request No. 21 as overbroad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. GutterGuard further objects to Request No. 21 on the grounds it seeks personal and confidential information regarding GutterGuard present and former employees, other than Plaintiffs. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 22: All correspondence and documents relating to any and all communications between any agent or attorney or any Defendant, including but not limited to Gary Hooper, Esq., and any representative of the Wage an Hour Division of the United States Department of Labor regarding the payment or non-

28

payment of overtime compensation to crew chiefs, installers and/or run-off crew members employed by Defendants.

**Response:**  GutterGuard objects to Request No. 22 to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  GutterGuard further objects to Request No. 22 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification.  See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  GutterGuard further objects to Request No. 22 as overbroad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs.  GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the

foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 23:   All documents referencing, relating, concerning or pertaining to the process, procedure, system and/or practice used at any time since January 20, 2000, to assign crew chiefs, installers and/or run-off crew members to their daily and/or weekly job assignments, including but not limited to any factors used by Defendants to determine when, why and/or under what circumstances a crew chief, installer, or run-off crew member has been assigned to travel across state lines to perform work for Defendants at any time since January 20, 2000.

**Response:**   GutterGuard objects Request No. 23 on the grounds it is irrelevant to the extent it seeks documents relating to employment practices or policies of GutterGuard other than pay policies pertaining to installation and run-off crews. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist,

GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 24: All documents contained in the personnel file(s) of all the plaintiffs named in Plaintiffs' Second Amended Collective Action Complaint, and of Defendants' Atlanta (Stone Mountain) Production Manages Dennis Taylor and Charles Yeh, including but not limited to any and all documents referencing, relating, concerning or pertaining to each employee's performance (reviews, accomplishments, promotions, demotions, deficiencies, customer complaints, reprimands, suspensions and/or other disciplinary actions), pay increases or decreases, and any and all deductions or withholdings from said employee's paycheck.

**Response**:  GutterGuard objects to Request No. 24 on the grounds it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs.  GutterGuard further objects to Request No. 24 to the extent it seeks personal and confidential information regarding GutterGuard employees, other than Plaintiffs. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such

31

information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce Plaintiffs' personnel files after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates. Confidential information will only be produced pursuant to an appropriate stipulation and order of confidentiality.

Request 25: All documents reflecting, relating, concerning or pertaining to your compliance with the rules and regulations of the Federal Motor Carrier Safety and/or U.S. Department of Transportation in connection with the employment and alleged interstate travel of crew chiefs, installers, and/or run-off crew members employed by Defendants at any time during the period from January 20, 2000 to the present. This would specifically include, but not be limited to, all driving logs maintained, all physical examinations and driving record checks conducted and all Department of Transportation forms required to be completed in connection with work performed by crew chiefs, installers and/or run-off crew members.

**Response:** GutterGuard objects to Request No. 25 to the extent it calls for the disclosure of information that is protected by the attorney/client privilege or which constitute trial preparation materials or attorney work product or which is otherwise privileged or protected and not subject to disclosure. GutterGuard also

32

objects to Request No. 25 as overbroad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seek documents pertaining to GutterGuard employees other than the Plaintiffs.  GutterGuard further objects to this Interrogatory insofar as it seeks a legal conclusion that GutterGuard should not be compelled to answer until the completion of discovery. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the foregoing objections and its general objections, GutterGuard will produce responsive documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 26:  Copies of written communications prepare by Kaspers & Associates Law Offices LLC for any crew chief, installer, and/or run-ff crew member currently or formerly employed by Defendants obtained by Defendants, including but not limited to, all fee and expense agreements and/or written consent forms obtained by Defendants.

**Response:**  Subject to and without waiving its general objections, GutterGuard will produce responsive, not-privileged documents after the Court rules on

33

Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 27:  All notes and records of communications since December 1, 2003 between any of the named Plaintiffs and any manager, supervisor or agent of Defendants.

**Response:**  GutterGuard objects to Request No. 27 on the grounds it is overbroad and unduly burdensome and fails to specify the documents with the particularity required by the Federal Rules of Civil Procedure.  GutterGuard further objects to this Request to the extent it requests information and documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the foregoing objections and its general objections, GutterGuard will produce responsive documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

34

Request 28: All documents upon which Defendants intend to rely in defense of the claims brought by Plaintiffs herein.

**Response:** GutterGuard objects to Request No. 28 to the extent it requests information and documents which are subject to the attorney-client privilege and or the attorney work product doctrine. GutterGuard further objects to the request on the grounds it is premature. GutterGuard will produce such non-privileged documents in connection with the pre-trial order.

Request 29: All documents which Defendants contend in any way support their Fourth (failure to mitigate) Affirmative Defense.

**Response:** GutterGuard objects to Request No. 29 to the extent it requests information and documents which are subject to the attorney-client privilege and or the attorney work product doctrine. GutterGuard further objects to the request on the grounds it is premature. GutterGuard will produce such non-privileged documents in connection with the pre-trial order.

Request 30: All documents which Defendants contend in any way support their Fifth (unclean hands) Affirmative Defense.

**Response:** GutterGuard objects to Request No. 30 to the extent it requests information and documents which are subject to the attorney-client privilege and or the attorney work product doctrine. GutterGuard further objects to the request on

the grounds it is premature. GutterGuard will produce such non-privileged documents in connection with the pre-trial order.

Request 31: All documents which Defendants contend in any way support their Seventh (Section 13(b)(1)'s motor carrier exemption) Affirmative Defense.

**Response:** GutterGuard objects to Request No. 31 to the extent it requests information and documents which are subject to the attorney-client privilege and or the attorney work product doctrine. GutterGuard further objects to the request on the grounds it is premature. GutterGuard will produce such non-privileged documents in connection with the pre-trial order.

Request 32: All written administrative regulations referred to and relied upon by Defendants in their Ninth Affirmative Defense.

**Response:** GutterGuard objects to Request No. 32 to the extent it requests information and documents which are subject to the attorney-client privilege and or the attorney work product doctrine. GutterGuard further objects to the request on the grounds it is premature. GutterGuard will produce such non-privileged documents in connection with the pre-trial order.

Request 33: All documents referencing, relating, concerning or pertaining Defendants' 401(k) plan.

**Response:** GutterGuard objects to Request No. 33 to the extent it seeks documents that are neither relevant nor reasonably calculated to the discovery of

evidence. GutterGuard further objects to Request No. 33 on the grounds that it is overbroad and unduly burdensome.

Request 34: All documents referencing, relating, concerning or pertaining to any cash advance or loan policy or program offered to any of Defendants' employees by Defendants anytime since January 20, 2000, all records reflecting any cash advances or loans made under said policy or program during said period to any of Defendants' employees and all records reflecting repayments of such cash advances or loans by the employees to whom said advances or loans were made.

**Response:** Defendant objects to Request No. 34 on the grounds it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 35:  All records of daily job assignments to crew chiefs, installers and run-off crew members employed by any Defendants at or out of Defendants' Atlanta (Stone Mountain) production facility since January 1, 2004.

**Response:**  GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 36:  All documents reflecting, relating, concerning or pertaining to any scrap metal sold and/or provided by Defendants to scrap metal companies and/or others at any time since February 9, 2001, including but not limited to any and all written agreements between any Defendant and Bay Metals, Biam Refuse, J. T. Knight & Company, Metro (Atlanta) Waste Services, Perlco, Stateline Scrap Metal Company and/or any other scrap metal company covering any portion of the period since February 9, 2001, and documents reflecting payments received from any of said scrap metal companies by any Defendant at any time since February 9, 2001.

38

**Response:** GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 37: All documents relating to property damage claims allegedly arising out of, relating to, or caused by materials dislodging and/or flying off the backs of trucks during transportation to or from a GutterGuard Warehouse site.

**Response:** GutterGuard objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general objections, to the extent they exist, GutterGuard will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P.

26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 38:  All statements and invoices of attorneys' fees and expenses incurred by Defendants in defense of this action (to be maintained during the pendency of this action and produced within ten (10) days after a determination of liability against Defendants and in favor of Plaintiffs).

**Response:**  GutterGuard objects to Request No. 38 on the grounds it is irrelevant and not reasonably calculated to the discovery of admissible evidence. GutterGuard further objects to this Request on the grounds it requests confidential commercial, financial, or corporate information that constitutes trade secrets regarding privately-held entities.  GutterGuard also objects to this request as it is seeks non-discoverable documents and is not authorized by the Federal Rules of Civil Procedure.  GutterGuard objects to this request to the extent it requests information and documents which are subject to the attorney-client privilege and or the attorney work product doctrine.

Respectfully submitted this \_\_\_\_ day of May, 2004.

Lisa A. Schreter
Georgia Bar No. 629852
Paul C. Munger
Georgia Bar No. 529606
L. Dale Owens
Georgia Bar No. 557482
Brett C. Bartlett
Georgia Bar No. 040510
Halima Horton
Georgia Bar No. 367888
JACKSON LEWIS LLP
1900 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia  30303
Telephone:  (404) 525-8200
Facsimile:  (404) 525-1173

**ATTORNEYS FOR DEFENDANTS**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---------------------------------------------------- X

GEORGE HERRMANN, ET AL.,

     Plaintiffs,

     v.

GUTTERGUARD, INC.,
DIXIE HOMECRAFTERS, and All
     Affiliated Companies,

     Defendants.

Civ. No.: 1:04-CV-0365-JEC

---------------------------------------------------- X

## CERTIFICATE OF SERVICE

I hereby certify I have served counsel for Plaintiffs with the foregoing

**GUTTERGUARD, INC., DIXIE HOMECRAFTERS, INC. AND ALL**

**AFFILIATED COMPANIES' RESPONSE TO PLAINTIFFS' FIRST**

**REQUEST FOR PRODUCTION OF DOCUMENTS** by first class mail to:

        William F. Kaspers, Esq.
        Sherri L. Kimmell, Esq.
        Kaspers & Associates Law Offices, LLC
        75 14th Street - Suite 2130
        Atlanta, Georgia  30309

This _7th_ day of May, 2004.

L. Dale Owens

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---------------------------------------------------------X

GEORGE HERRMANN, ET AL.,

       Plaintiffs,

       v.

GUTTERGUARD, INC.,
DIXIE HOMECRAFTERS, and All
    Affiliated Companies,

       Defendants.

Civ. No.: 1:04-CV-0365-JEC

---------------------------------------------------------X

## DIXIE HOMECRAFTERS, INC. AND ALL NON-GUTTERGUARD AFFILIATED COMPANIES' RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

       Defendants Dixie Homecrafters, and all affiliated companies other than GutterGuard, Inc., (for purposes of this response, collectively and separately included in each reference to "Dixie" herein), by their undersigned counsel, pursuant to Rule 34 of the Federal Rules of Civil Procedure, respond to Plaintiffs' First Request for Production of Documents.

## GENERAL OBJECTIONS

       1.     Dixie objects generally to Plaintiffs' Request For Production of Documents on the grounds Plaintiffs request information which is not relevant to

**ATTACHMENT B**

the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

2.   Dixie objects generally to Plaintiffs' Request for Production to the extent Plaintiffs request information or documents which are subject to the attorney/client privilege, or which constitute trial preparation materials or attorney work product, or which are otherwise privileged or protected and not subject to discovery.  The documents which fall within the scope of this objection include: (a) communications between outside counsel and any employees of any Defendant, including but not limited to, in-house counsel, paralegals, and human resource personnel; (b) communications between in-house counsel and employees of any Defendant, including but not limited to, human resources personnel; and (c) communications, prepared at the direction of counsel, between human resources personnel and other employees of any Defendant.

3.   Dixie objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.   Dixie objects to Plaintiffs' Request For Production on the grounds Plaintiffs request information or documents which constitute or contain trade secrets or confidential corporate, financial, or commercial information.  Dixie

will produce such information or documents, if not subject to any other objections, only pursuant to an appropriate Stipulation and Order of Confidentiality.

      5.    Dixie objects generally to Plaintiffs' Request for Production on the grounds Plaintiffs request information or documents regarding any current or former employees, other than Plaintiffs who are employees of GutterGuard, which is personal or confidential.  Dixie will produce such information or documents, if not subject to any other objections, only pursuant to an appropriate Stipulation and Order of Confidentiality.

      6.    Dixie objects to each request (or part thereof) on the grounds Plaintiffs request Dixie to warrant the information or documents provided are exhaustive of each request.  Dixie will endeavor to provide information in good faith and consistent with its obligations under the Federal Rules of Civil Procedure and the local rules of the Northern District of Georgia.

      7.    Dixie is continuing to investigate Plaintiffs' claims.  It reserves the right to supplement its responses to each and every request for production of documents (or part thereof).

3

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Request 1:   The full names and last known addresses of all persons employed by any Defendant as a crew chief, installer and/or run-off crew member anytime during the period from February 9, 2001 to the present.

**Response:**   Dixie objects to Request No. 1 on the grounds it does not request a readily identifiable document.  Dixie also objects to Request No. 1 on the grounds it fails to describe the documents requested with reasonable particularity as required by Fed.R.Civ.P. 34(b).  Dixie further objects to Request No. 1 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification.  See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  Dixie further objects to Request No. 1 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs.  Dixie further objects to Request No. 1 on the grounds it seeks personal and

confidential information regarding employees, other than Plaintiffs. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce any responsive, not-privileged documents, pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 2:   All documents reflecting the number of hours worked each workweek from February 9, 2001 to the present (excluding any workweek(s) in which no work was performed) by each person employed by any Defendant anytime during the period from February 9, 2001 to the present, including but not limited to each person employed as a crew chief, installer and/or run-off crew member by any Defendant anytime during the period from February 9, 2001 to the present.

**Response:**   Dixie objects to Request No. 2 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks

5

v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  Dixie further objects to Request No. 2 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. Dixie further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Dixie further objects to Request No. 2 on the grounds it seeks personal and confidential information regarding present and former employees, other than Plaintiffs.   Dixie objects to Request No. 2 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce any responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 3:   All documents reflecting the compensation received each workweek from February 9, 2001 to the present (excluding any workweek(s) in which no work was performed and compensation received) by each person employed by any Defendant anytime during the period from February 9, 2001 to the present, including but not limited to all persons employed by any Defendant as a crew chief, installer and/or run-off crew member anytime during the period from February 9, 2001 to the present, and including but not limited to all hard and soft copies of Defendants' payroll records covering the period from February 9, 2001 to the present.

**Response:**   Dixie objects to Request No. 3 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). Dixie further objects to Request No. 3 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the

7

extent it seeks information regarding non-Plaintiffs. Dixie further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Dixie further objects to Request No. 3 on the grounds it seeks personal and confidential information regarding any Defendant's and former employees, other than Plaintiffs. Dixie objects to Request No. 3 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 4:   All weekly and year-to-day earnings statements issued by any Defendant from February 9, 2001 to the present, including but not limited all earning statements issued since February 9, 2001 to any person employed as a crew chief, installer or run-off crew member by any Defendant.

8

**Response:** Dixie objects to Request No. 4 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). Dixie further objects to Request No. 4 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. Dixie further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Dixie further objects to Request No. 4 on the grounds it seeks personal and confidential information regarding any Defendant's and former employees, other than Plaintiffs. Dixie objects to Request No. 4 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither

9

relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

Request 5:  All IRS W-2 statements covering any and all workweeks during the period from February 9, 2001 to the present issued by any Defendant to any person employed by any Defendant, including but not limited to any person employed by any Defendant as a crew chief, installer or run-off crew member anytime during said period.

**Response:**  Dixie objects to Request No. 5 because it exceeds the scope of permissible discovery, as it is premature prior to certification and improperly presumes Plaintiffs' proposed class before the Court has ruled on Plaintiffs' Motion for Conditional Certification. See Crawford v. Dothan City Bd. of Edu., 214 F.R.D. 694 (M.D. Ala. 2003); Spellman v. Visionquest Nat'l, Ltd., 1998 U.S. Dist. LEXIS 4298 (W.D. Pa. 1998) (court declined to enforce discovery requests in proposed collective action that presupposed conditional class certification); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995); see

10

also Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). Dixie further objects to Request No. 5 as overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding non-Plaintiffs. Dixie further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Dixie further objects to Request No. 5 on the grounds it seeks personal and confidential information regarding any Defendant's and former employees, other than Plaintiffs. Dixie objects to Request No. 5 insofar as it seeks information or documents regarding employees other than crew chiefs, installers and/or run-off crew members, on the grounds it is over broad and unduly burdensome and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.

11

Request 6: All organization charts of any Defendant since Defendant GutterGuard, Inc. was incorporated on January 20, 2000.

**Response:** Dixie objects to Request No. 6 on the grounds it seeks documents neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Dixie further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce any responsive, not-privileged documents pertaining to Plaintiffs after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates. Any confidential document will only be produced pursuant to an appropriate stipulation and order of confidentiality.

Request 7: All documents referencing the ownership, incorporation, dissolution or merger of the Defendants or any of their affiliated companies since January 1, 1991.

**Response:** Dixie objects to Request No. 7 on the grounds it seeks documents neither relevant nor reasonably calculated to lead to the discovery of admissible

12

evidence. Dixie further objects to Request No. 7 to the extent it seeks documents produced prior to the incorporation of GutterGuard. Dixie further objects to this request to the extent that it seeks information about events outside the period from February 9, 2001, to February 9, 2004, on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and its general objections, to the extent they are in Dixie's possession, custody or control, Dixie will produce responsive, not-privileged documents after the Court rules on Defendants' pending Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c) and Defendants' Motion To Disqualify William F. Kaspers And Kaspers & Associates.   Any confidential document will only be produced pursuant to an appropriate stipulation and order of confidentiality.

Request 8:  All documents referencing, relating, concerning or pertaining to any audit of Defendants' employment practices and/or policies conducted since January 20, 2000.

**Response:**  Dixie objects to Request No. 8 on the grounds it seeks information protected by the attorney-client privilege, the attorney work product doctrine and any applicable accountant-client privileges. Dixie further objects to Request No. 8 on the grounds it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents relating to