IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta
MAR 24 2008
By: JAMES N. HATTEN, Clerk
Deputy Clerk

| | |
|---|---|
| GEORGE HERRMANN, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:04-CV-0365-JEC |
| GUTTERGUARD, INC., DIXIE HOMECRAFTERS, INC, and affiliated companies, | |
| Defendants. | |

### O R D E R  &  O P I N I O N

This case is presently before the Court on William Kaspers' Motion for Attorneys' Fees [352], defendants' Motion to Exclude Evidence in Support of Kaspers' Fee Petition [355], and Kaspers' Motion for Leave to File Excess Pages [357]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Kaspers' Motion for Attorneys' Fees [352] should be **DENIED without prejudice**; defendants' Motion to Exclude Evidence in Support of Kaspers' Fee Petition [355] should be **DENIED as moot**; and Kaspers' Motion for Leave to File Excess Pages [357] should be **DENIED as moot**.

AO 72A
(Rev.8/82)

**BACKGROUND**

This fee petition arises from an FLSA collective action filed by plaintiffs in February, 2004. (Compl. [1].) Plaintiffs alleged in their Complaint that defendant Gutterguard and its parent company, Dixie Homecrafters, willfully failed to pay them overtime to which they were entitled under the FLSA. (*Id.*) They sought damages and injunctive relief. (*Id.*)

Plaintiffs were originally represented by William Kaspers, the sole partner in the law firm Kaspers and Associates ("K&A"). (*Id.*) Prior to founding K&A, Kaspers had been a longstanding partner at the law firm Fisher and Phillips ("F&P"). (Order [201] at 3.) During the time that Kaspers was a partner at F&P, the latter had represented defendants in employment matters, and had conducted a Compliance Audit reviewing defendants' wage and hour practices. (*Id.*)

Early in the litigation, Kaspers filed a motion for conditional certification of the case as a collective action. (Pls.' Mot. for Conditional Certification [22] at 25.) Kaspers argued in the motion that defendants had acted willfully in failing to pay plaintiffs overtime. (*Id.*) In support of that allegation, Kaspers relied on work and advice given by F&P at a time when Kaspers was still a partner there, stating:

> This case presents as compelling evidence of willfulness as one can imagine. As 'Plaintiffs' Exhibit D' attached to Plaintiffs' Statement indicates, <u>on February 28, 2000, shortly</u>

> after Gutterguard was incorporated, a distinguished employment law firm explained to the Defendants the requirements of the wage and hour law vis-a-vis all job titles in all of Defendants' companies. Following this briefing, Defendants paid overtime compensation to at least some of its production workers for a brief period in 2000. . . . However, in mid-November, 2000, Defendants discontinued paying overtime compensation to production crews, deciding instead to spend the overtime compensation due these employees on expanding the business.

(*Id.*)

Thereafter, defendants filed a motion to disqualify Kaspers from representing plaintiffs. (Defs.' Mot. to Disqualify [58].) The motion triggered extensive litigation concerning whether Kaspers' representation of plaintiffs in litigation against a former client of F&P violated Rule 1.9(b) of the Georgia Rules of Professional Conduct. (Order [201] at 4.) After conducting a conference with the parties, the Court determined that the disqualification issue should be resolved prior to any other issues in the case. (Order [73].) The Court therefore issued an order on May 25, 2004 staying the case pending a ruling on defendants' motion to disqualify. (*Id.*)

The parties subsequently conducted discovery and submitted memoranda concerning the disqualification issue. (Order [201] at 5.) Following a hearing and another round of briefing, the Court issued an order granting defendants' motion to disqualify on September 30, 2005. (*Id.* at 38.) Pursuant to Kasper' request, the Court certified its disqualification order for interlocutory appeal. (Judgment of

3

USCA [310] at 3.) The Eleventh Circuit affirmed the Court's order. (*Id.*)

After Kaspers' disqualification, plaintiffs were represented by replacement counsel George Duncan, M. Reid Estes, and David Gore, who had entered an appearance in the case on May 6, 2005. (Order [201] at 39-40.) With the assistance of replacement counsel, plaintiffs settled their FLSA claims against defendants following a mediation in February, 2007. (Order [348].) According to Kaspers, the terms of the settlement required defendant to pay plaintiffs a total of $550,000 in overtime compensation, $550,000 in liquidated damages, and $600,600 in fees and expenses incurred by plaintiffs' replacement counsel.[1] (Kaspers' Mot. for Fees [352] at 8.)

The only issue that the parties did not resolve in the settlement is whether Kaspers should be compensated for the work that he did on the case prior to his disqualification. (Proposed Order [348].) With respect to that issue, the parties submitted a consent order allowing Kaspers to present a fee petition detailing the services provided by Kaspers and his firm. (*Id.*) The Court subsequently entered an Order requiring Kaspers to submit a petition for attorneys' fees, costs, and expenses, together with full

---

[1] Although defendants do not dispute these figures, they argue that Kaspers has failed to provide any evidence to support them. (*See* Defs.' Resp. in Opp'n to Kaspers' Mot. for Fees [354] at 5.)

4

documentation for all amounts sought. (Order [349].)

In response to the Court's order, Kaspers has submitted a petition requesting approximately $500,000 in legal fees and expenses. (Kaspers' Mot. for Fees [352].) Kaspers' petition, and several related motions, are presently before the Court.

### DISCUSSION

I. **Kaspers' Motion for Attorneys' Fees**

The FLSA provides for a mandatory award of attorneys' fees to prevailing plaintiffs. 29 U.S.C. § 216(b). *See also Reyes v. Falling Star Enter., Inc.*, 2006 WL 2927553 *2 (M.D. Fla. 2006)(noting the mandatory nature of attorneys' fees under the FLSA). Plaintiffs unquestionably prevailed on their FLSA claims--they obtained substantial monetary relief, including full payment of the fees and expenses incurred by their replacement counsel. *See Jean v. Nelson*, 863 F.2d 759, 765 (11th Cir. 1988)("The prevailing party test is 'whether [plaintiff] has received substantially the relief requested *or* has been successful on the central issue'") (quoting *Watkins v. Mobile Hous. Bd.*, 632 F.2d 565, 567 (5th Cir. 1980)). However, defendants contend that Kaspers is not personally entitled to any fees because: (1) he was disqualified from representing plaintiffs; and (2) his billing records demonstrate that he violated the Court's disqualification order. (Defs.' Resp. in Opp'n to Kaspers' Mot. for Fees ("Defs.' Opp'n") [354] at 1-2.)

5

Contrary to defendants' argument, the Court finds that Kaspers should be compensated for work he performed prior to his disqualification that specifically contributed to plaintiffs' favorable result in the litigation. *See Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1207 (10th Cir. 2000)(noting that the district court had permitted an attorney to recover fees incurred prior to her disqualification) and *In re M-H Group, Inc.*, 139 B.R. 836, 841 (N.D. Ohio 1991)("Although [the conflicted attorney] cannot represent the Debtors, [the attorney] should be compensated under a quantum meruit theory."). The relevant issue with respect to attorneys' fees is simply "whether services were performed which contributed to [plaintiffs'] success in the lawsuit." *Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986). In this case, they undoubtedly were.

In the early stages of the litigation, Kaspers performed various activities that were helpful to plaintiffs' ultimate success, including researching the factual background and legal elements of plaintiffs' FLSA claims and drafting the Complaint. (*See* Kaspers' Mot. for Fees [352] at 18.) Defendants do not dispute that plaintiffs' replacement counsel utilized and incorporated Kaspers' work product. (*Id.* at 25-26.) Kaspers' conduct was not so egregious as to justify a complete denial of fees for work that he performed, prior to his disqualification, that demonstrably advanced plaintiffs'

6

cause. *See Mammano*, 792 F.2d at 1245 (noting that a "total denial of fees" is only justified in "extreme circumstances").

However, Kaspers is not entitled to all or even most of the fees that he requests in his voluminous fee petition. In support of his petition, Kaspers has submitted 41 invoices totaling over $1 million in fees and expenses for legal services allegedly provided between February 5, 2004 and July 6, 2007. (Kaspers' Mot. for Fees [352].) The majority of the fees reflected in those invoices clearly are not compensable.

As noted above, the Court issued an order staying this litigation on May 25, 2004. (Order [73].) The Court indicated in the order that it intended to resolve the disqualification issue before ruling on any unrelated matters, including discovery and other substantive issues. (*Id.*) Yet, Kaspers' invoices reflect a significant number of hours spent on discovery and other matters unrelated to the disqualification issue after May 25, 2004. (Kaspers' Mot. for Fees [352].) Given the Court's order staying the proceedings, these hours are not reasonable and will not be permitted.

In fact, and remarkably in the Court's opinion, Kaspers' invoices reflect numerous hours allegedly spent by Kaspers performing substantive work on the case following the Court's September 30, 2005 disqualification order. (*Id.*) For example, Kaspers' invoices

between October, 2005 and February, 2007 reference several "status conferences" between Kaspers and lead plaintiff Herrmann.[2] (*Id.*) Obviously, Kaspers cannot recover fees for his activities following, and likely in violation of, the Court's disqualification order. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1208 (11th Cir. 1985)("orders of the court must be obeyed until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process").

Neither can Kaspers recover fees for work related to the disqualification issue. In determining reasonable hours, the Court "must deduct time spent on discrete and unsuccessful claims." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). *See also Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) (noting that "time spent pursuing unsuccessful claims" should be excluded from the hours claimed by a fee applicant) and *Jean*, 863

---

[2] Lead plaintiff Herrmann's testimony suggests that Kaspers initiated most of these contacts, which were generally unsolicited and unwelcome. (*See* Herrmann Aff., attached to Defs.' Opp'n [354].) In his affidavit, Herrmann recalled that Kaspers routinely called him following the Court's disqualification order, and that these phone calls "got old very quickly." (*Id.* at ¶ 7.) Herrmann further stated that Kaspers did other things to try to stay involved in the lawsuit, such as arranging to be in the federal building while plaintiffs were participating in a conference in October, 2005, attempting to bring boxes of files into a hearing with the Magistrate Judge in December, 2005, and attempting to attend the parties' mediation in February, 2007. (*Id.* at ¶¶ 8-10, 13-14.) When Herrmann began to avoid Kaspers' telephone calls, Kaspers continued to try to contact Herrmann via e-mail. (*Id.* at ¶ 12.)

8

F.2d at 772 ("the fee award should exclude the time spent on [the] unsuccessful claim [] except to the extent that such time overlapped with related successful claims"). Almost all of Kaspers' invoices after April, 2004 reference hours spent on the disqualification issue. These hours are not compensable under the FLSA's fee-shifting provision because: (1) Kaspers did not prevail on the disqualification issue in this Court or on appeal; and (2) Kaspers' work on the disqualification issue did not in any way advance plaintiffs' claims or contribute to plaintiffs' favorable settlement in this case. *Id.* at 770-771 (holding that plaintiffs could not recover fees for Supreme Court litigation where they did not prevail on any legal issue or obtain any additional relief).

It is unreasonable for Kaspers to expect the Court and defendants to sift through his invoices to excise hours that Kaspers clearly should be aware are non-compensable, including time spent on the case following the Court's stay order and time related to the disqualification issue. Even if the Court were inclined to undertake this tedious and time-consuming task, Kaspers' invoices do not provide a rational basis to distinguish between compensable and non-compensable time. Although the invoices show the total amount of time spent on the litigation each day, they do not segregate the time according to the discrete task performed. To cite one example, on April 22, 2004 Kaspers recorded nine hours of time spent on the

9

following: "Work on responses to request to disqualify; review and revise motion to limit communications between Defendants and current and prospective plaintiffs; review case files." Entries like this—and there are many—are not particularly instructive as to the number of *compensable* hours that Kaspers expended on the litigation.

To determine the proper amount of Kaspers' fee, the Court must multiply the number of hours Kaspers "reasonably expended" on the case by a "reasonable hourly rate." *Norman,* 836 F.2d at 1299 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). *See also, Ass'n of Disabled Am. v. Neptune Designs, Inc.,* 469 F.3d 1357, 1359-60 (11th Cir. 2006) (discussing the standard for calculating attorneys' fees). Unfortunately, Kaspers' fee petition does not provide any reliable basis for calculating the hours that he "reasonably expended" on the litigation. In its current form, Kaspers' fee petition does not permit even a crude separation between compensable and non-compensable hours.[3] Accordingly, the Court **DENIES without prejudice**

---

[3] The Court rejects Kaspers' suggestion to simply reduce his $1 million bill by 50%. (*See* Kaspers' Mot. for Fees [352] at 42.) The Court "must be reasonably precise in excluding the hours [in a fee application that are] thought to be unreasonable or unnecessary." *Gray v. Lockheed Aeronautical Sys. Co.,* 125 F.3d 1387, 1389 (11th Cir. 1997). *See also Duckworth v. Whisenant,* 97 F.3d 1393, 1397 (11th Cir. 1996)("reducing the hours claimed requires the court's precision"). Kaspers' suggested method is not especially precise. Moreover, even a 50% reduction results in an outrageously excessive bill for the number of *compensable* hours that Kaspers spent on this case.

Kaspers' motion for attorneys' fees [352].

The Court directs Kaspers to file a revised petition for attorneys' fees within thirty (30) days of the date that this Order is issued. Defendants should respond to the revised petition within twenty (20) days of its submission. Kaspers' revised petition should exclude all hours related to work: (1) performed after the Court's May 25, 2004 stay order; and (2) related to the disqualification issue. If Kaspers' revised petition does not abide by these guidelines, it will be denied with prejudice.

As Kaspers' unreasonable fee petition has necessitated a second round of briefing on this issue, the Court will consider a request by defendants to recover the fees associated with preparing its original response to Kaspers' petition. Defendants may seek this offset in their response brief. In ruling on Kaspers' revised petition, upon request by defendants, the Court will consider whether a reduction in Kaspers' fees is warranted as a result of his conduct in this litigation, including his apparent violation of the Court's disqualification order.

## II. Defendants' Motion to Exclude Evidence

In conjunction with their opposition to Kaspers' fee petition, defendants have filed a motion in limine to preclude Kaspers from introducing any new evidence at the Court's hearing on the petition. (Defs.' Mot. to Exclude Evidence [355].) The Court has ordered

Kaspers to submit a revised fee petition. Accordingly, defendants' motion to exclude new evidence [355] is **DENIED as moot**.

In addition, the Court takes this opportunity to inform the parties that it does not intend to have a hearing on Kaspers' fee petition. A hearing is only necessary where there are disputed issues of fact that cannot sufficiently be resolved on the written record. See Norman, 836 F.2d at 1304 (recognizing that evidentiary hearings are not generally necessary to determine whether a fee request is reasonable). Petitions for attorney's fees are routinely resolved on the pleadings. The Court does not believe that a hearing is warranted in this case. Id. If either party disagrees, that party should specifically request a hearing--in the defendants' response or plaintiff's reply--and explain the basis for the request, pointing out the disputed issues of fact and why those issues cannot be resolved on the record.

## CONCLUSION

For the foregoing reasons, the Court **DENIES without prejudice** Kaspers' Motion for Attorneys' Fees [352]; **DENIES as moot** defendants' Motion to Exclude Evidence in Support of Kaspers' Fee Petition [355]; and **DENIES as moot** Kaspers' Motion for Leave to File Excess Pages [357].

Kaspers shall file a revised petition within **thirty (30) days** of

this date.   Defendant shall respond within **twenty (20) days**.

SO ORDERED, this 25 day of March, 2008.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

13